IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRIAN G.,[1]

      **Plaintiff,**

v.

      Civil Action 2:21-cv-1831
      Chief Judge Algenon L. Marbley
      Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL
SECURITY,

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Brian G., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Supplemental Security Income benefits ("SSI"). Pending before the Court is Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 10). For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.  BACKGROUND**

Plaintiff filed his application for SSI on March 27, 2019, alleging disability that same day due to Crohn's Disease, degenerative disc disease, depression, anxiety, posttraumatic stress disorder and alcohol dependence. (R. at 179-187, 208.) Plaintiff's application was denied

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

initially in September 2019, and upon reconsideration in December 2019.  (R. at 77-107.)  On August 4, 2020, Plaintiff, who was represented by counsel, appeared and testified via telephone at a hearing held by an administrative law judge.  (R. at 29-49.)  A vocational expert ("VE") also appeared and testified.  (*Id.*)  On September 17, 2020, Julianne Hostovich (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 7-28.)  On February 8, 2021, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, which became the Commissioner's final decision.  (R. at 1-6.)  Plaintiff then timely commenced the instant action.

## II.  HEARING TESTIMONY

The ALJ summarized Plaintiff's statements to the agency and the relevant hearing testimony as follows:

> Plaintiff] testified to having gastrointestinal issues beginning two years prior, with associated incontinence and frequent use of the bathroom from five to twelve times per day. He also reports being unable to anticipate his urgency. Additionally, [Plaintiff] indicates having lost thirty pounds of weight because of his gastrointestinal issues, and that he experiences extreme weakness, lack of appetite, constant abdominal pain, back pain, and sickness. However, he reports some recent improvement following a change in medications, but states that he must still use the bathroom about five times per day with unexpected urgency. With the change in medication, [Plaintiff] also testified to having lessened abdominal pain and cramping. Further, [Plaintiff] endorsed having a past history of alcohol abuse with a most recent relapse in September 2019. However, he reports no longer consuming alcohol and indicates receiving counseling for both mental health and substance use issues. Further, [Plaintiff] states that due to back pain he has poor balance and always walks with a cane. He also reports not wanting to proceed with additional recommended back surgery. In regards to his psychological condition, [Plaintiff] alleges a worsening of his depression and anxiety secondary to his medical conditions. In terms of daily activities, [Plaintiff] testified that he is involved in his father's church and that he plays guitar in the praise team. He also reports living with his parents.

(R. at 16 (internal citations omitted).)

### III. MEDICAL RECORDS

The ALJ summarized Plaintiff's relevant medical records and symptoms related to his gastrointestinal issues[2] as follows:

> Emergency department records from August 16, 2018 show [Plaintiff] presenting with urogenital complaints and that he was diagnosed with a kidney stone. However, at the time he was found to have a normal back inspection, CVA tenderness, and a neurologically intact exam. CT imaging of the abdomen and pelvis indicated moderate-advanced degenerative disc disease at L3 through S1 with multilevel exiting nerve effacement/compression suggested, as well as an unremarkable appearance of spinous process clamp at L3-L4.
>
> * * *
>
> Additionally, [Plaintiff] reported experiencing bowel dysfunction secondary to ulcerative colitis diagnosed in October 2018, and endorsed having ten to 20 bowel movements per day along with frequent cramping, aching, and abdominal pain.
>
> * * *
>
> The record also shows that [Plaintiff] has been diagnosed with Cohn's disease and ulcerative colitis. Treatment records from November 13, 2018 note [Plaintiff] as presenting with weight loss, chronic diarrhea, nausea, vomiting, GERD, and elevated hepatic enzymes. [Plaintiff] also stated that he began feeling sick beginning 14 weeks prior with chronic diarrhea, weight loss of 30 pounds, and two to three watery bowel movements per day, although he was not awakened by diarrhea during the night. CT imaging of the abdomen and pelvis demonstrated non-obstructing right nephrolithiasis, hepatic steatosis, small hiatal hernia, and diverticulosis but no evidence of diverticulitis. At the time, [Plaintiff] was assessed with chronic diarrhea, weight loss, GERD without esophagitis, nausea and vomiting, and abnormal liver function testing.
>
> Gastroenterologist records from February 7, 2019 include review of an EGD and colonoscopy from December 2018 that was noted to indicate evidence of focal active colitis in the right colon, hiatal hernia, gastritis, and questionable Barrett's esophagus. At the time, [Plaintiff] was diagnosed with inflammatory bowel disease. Additionally, on March 19, 2019 he was reported to have alternative bouts of diarrhea and constipation, occasional bouts of melena and rectal bleeding, and intermittent right upper quadrant abdominal pain. However, his ulcerative colitis was indicated to be improved with prednisone.

---

[2] Because Plaintiff's Statement of Errors, ECF No. 16, pertains only to his gastrointestinal impairments, the Undersigned's discussion is limited to the same.

> Subsequent treatment records from May 14, 2019 note that [Plaintiff] had lost twenty pounds over the last eight months and was reporting vague abdominal pain along with diarrhea and rectal bleeding as well as one to eight bowel movements per day with some awaken him at night. Progress notes from May 21, 2019 also indicate that [Plaintiff] had started Humira shorts [*sic*] for ulcerative colitis, and would be receiving an injection every two weeks. A gastroenterology follow-up on July 9, 2019 notes that he was doing well on Humira every other week. He reported occasional diarrhea when eating pizza or salad, but no constipation and one black stool. [Plaintiff] had also gained ten pounds in two months, and denied having nausea or vomiting.
>
> During the August 22, 2019 consultative medical examination, [Plaintiff] was reported to have ten to twenty bowel movements daily. Further, gastroenterology records from September 25, 2019 show [Plaintiff] presenting with diarrhea and abdominal pain that began a few days after his last office visit in July 2019. However, a colonoscopy on October 13, 2019 indicated no gross colitis, and his abdominal pain and diarrhea were note to be related to either irritable bowel syndrome or dietary indiscretion.
>
> In addition, a follow-up on November 5, 2019 includes reports of hourly diarrhea over the prior week. Gastroenterology records from February 18, 2020 also shows [Plaintiff] reporting five to twelve bowel movements daily. However, a colonoscopy performed on May 29, 2020 contained normal findings and diagnosed [Plaintiff] with non-infective gastroenteritis and colitis.

(R. at 17-19 (internal citations omitted).)

## IV.  ADMINISTRATIVE DECISION

On September 17, 2020, the ALJ issued the non-disability determination. (R. at 7-28.)

At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff has not engaged in

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.    Is the claimant engaged in substantial gainful activity?
    2.    Does the claimant suffer from one or more severe impairments?
    3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

4

substantially gainful activity since March 27, 2019, the application date. (R. at 13.) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease, ulcerative colitis, irritable bowel syndrome, GERD, bipolar disorder, PTSD, and depression. (*Id.*) She further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

>Before proceeding to step four, the ALJ set forth Plaintiff's RFC as follows:
>
>After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but can never climb ladders, ropes or scaffolds. [Plaintiff] can also have frequent exposure to extreme cold, wetness, humidity and vibrations, but can have no exposure to hazards. Additionally, he can perform simple routine tasks, make simple work[-]related decisions, and adapt to routine workplace changes. [Plaintiff] also can have no interaction with the general public, and only occasional contact with coworkers. Further, he can have no fast-paced production quotas. [Plaintiff] would need to use a cane for balance. He would also need unscheduled breaks to use the restroom, consisting of 2 additional breaks for up to 5 minutes each in addition to the normal work breaks.

(R. at 15-16.)

At step four, the ALJ determined that Plaintiff is unable to perform his past relevant work as a carpenter and forklift operator. (R. at 21-22.) Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (R. at 22-23.) The ALJ therefore concluded that Plaintiff has not been under a

---

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

disability, as defined in the Social Security Act, since March 27, 2019, the alleged onset date. (R. at 23.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 119 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'"

*Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff raises two issues in his statement of errors. (ECF No. 11.) First, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's gastrointestinal issues and their impact on his ability to perform basic work activities. (*Id.* at PAGEID ## 1835-1841.) Plaintiff specifically takes issue with the ALJ's discussion of the June 29, 2020 opinion of Viyah Udawatta, M.D., Plaintiff's treating gastroenterologist, arguing that "the ALJ failed to properly evaluate Dr. Udawatta's treating source opinions for consistency and supportability." (*Id.*) Plaintiff argues that "[w]hile the ALJ raises concerns of supportability, what the ALJ is actually referring to [] is the consistency between Dr. Udawatta's opinions and the rest of the record." (*Id.* at PAGEID # 1837.) Plaintiff argues that "the ALJ did not properly consider whether Dr. Udawatta's opinions were properly supported," and submits that "instead of relying on Dr. Udawatta's opinions and the evidence of record, the ALJ created a [RFC] that was completely arbitrary." (*Id.* at PAGEID # 1839.) As discussed below, the Undersigned finds Plaintiff's first assignment of error to be well taken.[4]

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must assess a claimant's RFC based on all of the relevant evidence in a claimant's case file. *Id*. The governing

---

[4] This finding obviates the need for in-depth analysis of the remaining issue. Thus, the Undersigned need not, and does not, resolve the alternative basis that Plaintiff asserts supports reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's other arguments if appropriate.

regulations[5] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)-(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3); 416.913(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. §§ 404.1513(a)(4); 416.913(a)(4). "Medical opinion" and "prior administrative medical finding" are defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
> > (i) (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> >
> > (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> >
> > (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

---

[5] Plaintiff's application was filed on March 27, 2019. (R. at 179-187.) It is therefore governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed, which went into effect for claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c.

>>(D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .
>
>* * *
>
>(5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:
>
>>(i) The existence and severity of your impairment(s);
>>
>>(ii) The existence and severity of your symptoms;
>>
>>(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; . . . .
>>
>>(v) . . . your residual functional capacity;
>>
>>(vi) Whether your impairment(s) meets the duration requirement; and
>>
>>(vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. §§ 404.1513(a)(2)(i), (5); 416.913(a)(2)(i), (5).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

9

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the regulations *require* an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. *Id.* If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how she or he considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. §§ 404.1520c(d); 416.920c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

Against that backdrop, the ALJ provided the following analysis of Dr. Udawatta's June 29, 2020 treating source opinion:

> The undersigned also considered the medical source statement of Dr. Viyan Udawatta, M.D. On June 29, 2020, Dr. Udawatta indicated [Plaintiff] to have symptoms including chronic diarrhea and bowel urgency resulting from lymphocytic colitis, irritable bowel syndrome with diarrhea, and GERD. As a result, Dr. Udawatta opined that [Plaintiff] would need ready access to a restroom, and would need to take an undetermined amount of unscheduled breaks throughout the workday with each lasting for upwards of thirty minutes. In addition, Dr. Udawatta opined that [Plaintiff] would be off-task for twenty percent of the workday, and would be absent from work approximately three days per month. **The undersigned finds Dr. Udawatta's opinion to be not persuasive, as it is unsupported by [Plaintiff's] treatment records that show an improvement in his ulcerative colitis and irritable bowel syndrome with medication, as well as grossly unremarkable colonoscopies in October 2019 and May 2020.** Nonetheless, the undersigned has accommodated additional restroom breaks in the above indicated [RFC] finding.

(R. at 20 (internal citations omitted; emphasis added).) While the ALJ arguably discussed the consistency of Dr. Udawatta's opinion with some of the other evidence of record, the ALJ made no effort to discuss the supportability of Dr. Udawatta's opinion – that is to say, the ALJ did not discuss Dr. Udawatta's references to "diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel*, 2021 WL 1697919, at *7 n.6. Indeed, a reader

11

with no previous knowledge of Plaintiff's claim would have no information regarding how Dr. Udawatta – Plaintiff's treating gastroenterologist, who presumably was the physician most familiar with Plaintiff's gastrointestinal issues and treatment – reached any of the conclusions which the ALJ found to be "not persuasive," because the ALJ did not discuss any of the "medical evidence and supporting explanations" underlying Dr. Udawatta's opinion as required. 20 C.F.R. § 404.1520c(c)(1). And as Plaintiff correctly points out, the ALJ's failure is not due to Dr. Udawatta's oversight, as Dr. Udawatta appropriately reviewed certain objective medical findings within his medical source statement. (ECF No. 17 at PAGEID # 1891 (citing R. at 1744).) Accordingly, the ALJ had a duty to discuss whether Dr. Udawatta's analysis of such objective medical findings supported his opinions, but the ALJ failed to do so.

The Commissioner argues that the ALJ "properly explained that he found the opinions of the state agency reviewing physicians to be 'partially persuasive,' and she crafted an RFC based on their recommended restrictions." (ECF No. 16 at PAGEID ## 1873-1876.) But the question at hand is not whether the ALJ properly discussed other evidence in the record. The question is whether the ALJ properly discussed Dr. Udawatta's opinion. To this end, the Commissioner does nothing to rebut Plaintiff's argument that under the applicable regulations, the ALJ had a duty to discuss the supportability factor when determining the persuasiveness of Dr. Udawatta's opinion. Indeed, the relevant regulation reads as follows:

> **The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider** when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, **we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision**. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

12

20 C.F.R. § 404.1520c(b)(2) (emphasis added). For the ALJ to have adequately discussed the supportability of Dr. Udawatta's opinion, the ALJ was required to evaluate what Dr. Udawatta said he had based his opinion on. The ALJ could not simply describe how Dr. Udawatta's opinion compared to the record evidence as a whole, which (as Plaintiff correctly notes) only goes to the consistency of Dr. Udawatta's opinion. *See Reusel*, 2021 WL 1697919, at *7 n.6 (discussing that an adequate "supportability" discussion "evaluat[ed] what [the doctor] said he based his opinion on," while a "consistency" discussion "compared the opinion to the evidence as a whole"). The ALJ simply did not do so, as the ALJ *only* discussed Dr. Udawatta's conclusions – not how Dr. Udawatta reached them. (*See* R. at 20.)

Given this conclusion, it is well settled that the ALJ's failure to discuss the supportability of Dr. Udawatta's opinion requires remand, because "without fuller explanation, this court cannot engage in meaningful review of the ALJ's decision." *Reed v. Comm'r of Soc. Sec.*, No. 3:20-CV-02611-CEH, 2021 WL 5908381, at *6 (N.D. Ohio Dec. 14, 2021) (quoting *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021)); *see also Jacob B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-617, 2022 WL 130761, at *8 (S.D. Ohio Jan. 14, 2022) ("In the absence of a sufficient explanation of supportability and consistency with the record as a whole, the Court cannot conclude that the ALJ's consideration of Dr. Rush's opinion is supported by substantial evidence . . . . Accordingly, the ALJ's decision must be reversed and remanded for further proceedings to properly analyze Dr. Rush's medical opinions pursuant to 20 C.F.R. § 404.1520c."). For this reason, the Undersigned rejects the Commissioner's argument that the ALJ's error was harmless. (*See* ECF No. 16 at PAGEID ## 1876-1877.) Accordingly, Plaintiff's first assignment of error is well taken, and the judicial inquiry ends.

13

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**DATED: April 14, 2022**

*/s/ Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**